## ATTORNEY GENERAL OF TEXAS

### GREG ABBOTT

February 16, 2011

The Honorable Allan B. Ritter
Chair, House Committee on Natural Resources
Texas House of Representatives
Post Office Box 2910
Austin, Texas 78768-2910

Opinion No. GA-0843

Re: Authority of the Sandy Land Underground
Water Conservation District to transfer certain
assets to an individual or other entity
(RQ-0904-GA)

Dear Representative Ritter:

You ask about the authority of the Sandy Land Underground Water Conservation District (the "District") to transfer certain assets to an individual or other entity.[1]

Under chapter 36 of the Water Code, an underground water conservation district is directed to "develop a comprehensive management plan which addresses [particular] management goals," including, *inter alia*, "conservation, recharge enhancement, rainwater harvesting, *precipitation enhancement*, or brush control, where appropriate and cost-effective." TEX. WATER CODE ANN. § 36.1071(a)(7) (West 2008) (emphasis added). You tell us that the District developed a comprehensive management plan that included among its goals that of cloud seeding for the intended purpose of "precipitation enhancement."[2] Request Letter at 1–2; *see* SANDY LAND UNDERGROUND WATER CONSERVATION DIST., MANAGEMENT PLAN (2009–2014) at 14 (Goal #4).[3] Because state funds are no longer available for cloud seeding operations, the District proposes to transfer certain assets of its cloud seeding program to "an individual or other entity that will essentially carry on the program's work so that the District can continue to benefit from program data gathering, research, and cloud seeding functions." Request Letter at 2. You ask whether, both in statutory and constitutional terms, the District may do so. *Id.* at 6.

With regard to statutory authority, section 36.158 of the Water Code provides:

> A district may make or accept grants, gratuities, advances, or
> loans in any form to or from any source approved by the board,

---

[1]Request Letter at 1–2 (*available at* http://www.texasattorneygeneral.gov).

[2]We presume that the executive management plan was submitted to and approved by the executive administrator of the Texas Water Development Board, in accordance with the statutory directive of sections 36.1071 and 36.1072 of the Water Code. *See* TEX. WATER CODE ANN. §§ 36.1071–.1072 (West 2008).

[3]*Available at* http://www.sandylandwater.com/documents.html (last visited Feb. 14, 2011).

> including any governmental entity, and may enter into contracts,
> agreements, and covenants in connection with grants, gratuities,
> advances, or loans that the board considers appropriate.

TEX. WATER CODE ANN. § 36.158 (West 2008).  Thus, in strictly statutory terms, the District is empowered to transfer the assets of its cloud seeding program to any entity "that the board considers appropriate."  As you note in your request, however, we must also consider constitutional issues, specifically section 52(a) of article III of the Texas Constitution, which prohibits the Legislature from authorizing any subdivision of the state "to lend its credit or to grant public money or thing of value in aid of, or to any individual, association or corporation whatsoever." TEX. CONST. art. III, § 52(a).

We do not understand your request to question the facial constitutionality of section 36.158 of the Water Code in so far as it generally authorizes the District to "make . . . grants."  Rather, we construe your request to assume the constitutionality of the statute by reading it to require any *particular* grant to conform to the relevant constitutional constraints.

The Texas Supreme Court has frequently declared that the prohibition of article III, section 52(a) means that the Legislature may not "require *gratuitous* payments to individuals, associations, or corporations."  *Tex. Mun. League Intergov'tl Risk Pool v. Tex. Workers' Comp. Comm'n*, 74 S.W.3d 377, 383 (Tex. 2002); *see also Edgewood Indep. Sch. Dist. v. Meno*, 917 S.W.2d 717, 740 (Tex. 1995); *Davis v. City of Lubbock*, 326 S.W.2d 699, 709 (Tex. 1959).  A political subdivision's transfer of public assets is not "gratuitous" if the political subdivision receives return consideration. *Tex. Mun. League Intergov'tl Risk Pool*, 74 S.W.3d at 383.  Such transfers are permissible so long as the statute authorizing them "serves a legitimate public purpose" and "affords a clear public benefit received in return."  *Id.*[4]

The Texas Supreme Court has articulated a three-part test to determine whether a statute accomplishes a public purpose under section 52(a).  The entity contemplating the grant must (1) ensure that its purpose is to "accomplish a public purpose, not to benefit private parties"; (2) retain public control over the public assets and/or rights associated with the transaction in order to ensure that a public purpose is accomplished and to protect the public's investment; and (3) "ensure that the political subdivision receives a return benefit."  *Id.* at 384.  In a prior opinion, we said that the determination of whether a particular contract or agreement accomplishes a public purpose and satisfies the three-part test articulated by the court is in the first instance a matter to be determined by the board of directors of the District, subject to judicial review.  Tex. Att'y Gen. Op. No. GA-0553 (2007) at 4; *see also* Tex. Att'y Gen. Op. No. JC-0080 (1999) at 5.

Whether article III, section 52(a) authorizes the transfer contemplated here will depend upon the facts of any particular transaction, including, *inter alia*, whether the transfer will accomplish the

---

[4]The Texas Supreme Court's decision was concerned with the facial constitutionality of the statute at issue in the *Risk Pool* case.  As we have noted, we are concerned in the present instance only with the question of whether the statute under consideration here, section 36.158 of the Water Code, may be constitutionally *applied* by the District.  *See Tex. Mun. League Intergov'tl Risk Pool*, 74 S.W.3d at 383–84.

statutory goals of the District, e.g., precipitation enhancement. Because you have not provided us with sufficient information about the details of the transaction, we cannot determine whether the transfer in question satisfies the constitutional test.

You also ask a series of questions about the circumstances and conditions under which the District may generally transfer assets from the cloud seeding program, including, potentially, a transfer of title to one or more aircraft. Request Letter at 6–7. You suggest, *inter alia*, that the Board may wish to transfer assets to one or more members of the Board, or to its officers and/or employees. *Id.* To the extent these questions implicate the constitutional authority of the District to accomplish the referenced transfer of assets, we will address them together. However, we lack the necessary information to make that determination because such an inquiry would necessarily involve mixed questions of law and fact, and is therefore beyond the scope of an attorney general opinion. Like the determination about the constitutionality of the transfer of the District's assets, these matters belong, in the first instance, to the sound discretion of the District's board of directors, subject to judicial review. We can here, however, briefly advise you of certain statutory provisions that must be addressed when considering a transfer to any current director, officer, or employee of the District.

Chapter 176 of the Local Government Code applies to a member of the governing board of the District, as well as to any officer and certain employees and vendors of the District. TEX. LOC. GOV'T CODE ANN. §§ 176.001–.003, .005 (West 2008). A person to whom chapter 176 is applicable is required, under certain circumstances, to file a "conflicts disclosure statement" under section 176.003, the contents of which are described by section 176.004. *See generally* Tex. Att'y Gen. Op. No. GA-0446 (2006).

Likewise, chapter 171 of the Local Government Code is applicable to every "local public official," defined to include a member of the board of directors of the District. *See* TEX. LOC. GOV'T CODE ANN. § 171.001(1) (West 2008). If a current District director "has a substantial interest in a business entity," and a transaction between the District board and that business entity will have a "special economic effect on the business entity that is distinguishable from the effect on the public," then the director is required to "file, before a vote or decision on any matter involving the business entity . . . an affidavit stating the nature and extent of the interest," and to "abstain from further participation in the matter." *Id.* § 171.004(a). Violation of section 171.004 constitutes a class A misdemeanor. *Id.* § 171.003(b). Before the board of directors of the District enters into any transaction to dispose of the assets described in your request, we urge the board to consult with its attorney.

## S U M M A R Y

The board of directors of the Sandy Land Underground Water Conservation District has broad statutory authority to transfer certain assets to any individual or entity. Whether it may do so under article III, section 52(a) of the Texas Constitution depends upon whether such transfer comports with the public purpose analysis promulgated by the Texas Supreme Court in *Texas Municipal League Intergovernmental Risk Pool v. Texas Workers' Compensation Commission*, 74 S.W.3d 377 (Tex. 2002), and its progeny.

Very truly yours,

GREG ABBOTT
Attorney General of Texas


DANIEL T. HODGE
First Assistant Attorney General

DAVID J. SCHENCK
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Rick Gilpin
Assistant Attorney General, Opinion Committee